# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OAKLEY, INC., <br><br> Plaintiff, <br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" <br><br> Defendants, | No. 20-cv-05049 <br><br> Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

Plaintiff Oakley, Inc. filed this so-called "Schedule A" case against various overseas online merchants including Defendant SPLOV Official Store. (Dkt. 2.) Plaintiff assembled its list of overseas Defendants by identifying online retailers marketing Plaintiff's patented products and then ordering infringing products for delivery into this District. (Dkt. 1 at 1-2.) Defendant now moves to dismiss the complaint against it and asserts two bases for dismissal: (1) the Court lacks personal jurisdiction over Defendant; and (2) service of process by email was improper. (Dkt. 39.) For the following reasons, Defendant's motion is denied.

## I. BACKGROUND

Oakley is a manufacturer, distributor, and retailer of eyewear, apparel, footwear, outerwear, jackets, accessories, and other merchandise. (Dkt. 1 ¶ 6.) Defendant is an online retailer that uses the AliExpress sales platform. (Dkt. 40 at 7.) On August 27, 2020, Oakey brought this patent-infringement action against a

large group of online retailers, including Defendant, alleging they sold counterfeit Oakley products. (Dkt. 1 ¶ 6.) Specifically, Plaintiff alleges Defendants infringed Plaintiff's patented design, U.S. Patent No. D847,897. (*Id.* ¶ 8.) Along with the complaint, Plaintiff filed Schedule A, a sealed exhibit listing the Defendants, including Defendant SPLOV, by seller alias and online marketplace domain name. (Dkt. 2.) Plaintiff identified Defendant SPLOV as a defendant because its PayPal records show it has made at least 15 sales to Illinois residents (including the allegedly infringing products, which Plaintiff purchased from Defendant). (Dkt. 48 ¶ 8.) In addition, Illinois is included in Defendant's "ship-to" options from which its customers are required to choose, and Defendant sends Illinois residents follow up emails confirming their Illinois addresses. (*Id.* ¶¶ 3-4.)

On August 28, 2020, Plaintiff sought a TRO against all defendants and requested leave under Rule 4(f)(3) of the Federal Rules of Civil Procedure to serve Defendant (and the other defendants) via email. (Dkt. 13; Dkt. 17; Dkt. 18.) The Court granted both requests on September 1, 2020. (Dkt. 24.) On September 24, 2020, Plaintiff filed a motion for a preliminary injunction. (Dkt. 36.) The next day, Defendant filed a motion to dismiss for lack of jurisdiction and improper service. (Dkt. 39.) That motion is now fully briefed. (Dkt. 40; Dkt. 47; Dkt. 51.)

## II. LEGAL STANDARD

A federal court must dismiss any action against a party over whom the court lacks personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden to make a *prima facie* case for personal jurisdiction. *uBID, Inc. v. GoDaddy Group, Inc.*,

2

623 F.3d 421, 423 (7th Cir. 2010). When determining whether a plaintiff has met its burden, a court must accept as true jurisdictional allegations pleaded in the complaint, unless those allegations are disproved by defendants' affidavits or exhibits. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, defendants may challenge the manner of service of process through a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(5). A plaintiff bears the "burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). If, on its own or on the defendant's motion, the court "finds that the plaintiff has not met that burden and lacks good cause for not perfecting service, the district court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant." *Id*.

### III. DISCUSSION

#### A. Personal Jurisdiction

Defendant provides several reasons in support of its contention that the Court lacks personal jurisdiction over it in this action. Defendant first argues that it "only shipped allegedly-infringing products [to Illinois] as a result of" the sales Plaintiff arranged. (Dkt. 40 at 7). Second, most online stores within AliExpress, like Defendant, "were accessible from Illinois, as well as everywhere else." (*Id*.) Finally, it has no "business presence in Illinois" and does not "target advertising or marketing" to Illinois. (*Id*.) For the reasons below, these arguments fail.

3

As the Seventh Circuit has explained, any analysis of specific personal jurisdiction must consider three separate requirements. *See Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008). *First*, the defendant must have "minimum contacts with the forum state." *Id.* To determine whether the defendant has such contacts, the court must ask whether "the defendant should reasonably anticipate being haled into court in the forum State, because the defendant has purposefully availed itself of the privilege of conducting activities there." *Id. Second*, the plaintiff's claims must "arise out of" the defendant's contacts with the forum. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). *Third*, and finally, maintenance of the suit must not "offend traditional notions of fair play and substantial justice." *Kinslow*, 538 F.3d at 691.

All three of these requirements are satisfied here. Although specific personal jurisdiction over an online retailer is not established merely because the retailer's website is available in the forum, online retailers form minimum contacts with a forum when they "st[and] ready and willing to do business with" residents of the forum and then "knowingly [ ] do business with" those residents. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759 (7th Cir. 2010). As the Seventh Circuit explained last year, minimum contacts were formed even though a defendant "s[old] its products only online through its website and third-party websites" because the defendant (1) included the forum in the "ship-to" options from which the customer had to choose; (2) sent a customer an email confirming a shipping address in the forum; and

(3) shipped product to an address in the forum. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392-93 (7th Cir. 2020).

As in *Curry*, Defendant's contacts with this forum included more than merely providing access to a website. Plaintiff has offered competent evidence that Illinois is included in the ship-to options on Defendant's site, that Defendant sent an email to Plaintiff confirming an Illinois shipping address for the allegedly infringing sale, and that Defendant shipped infringing products to Illinois. (Dkt. 48 ¶¶ 3-4, 8.) Defendant does not deny any of these assertions. (*See* Dkt. 47 at 6). Accordingly, this Court has virtually identical grounds to exercise personal jurisdiction over Defendant that the Seventh Circuit found sufficient in *Curry*. 949 F.3d at 392-93.

Defendant relies primarily on three cases to oppose a finding of personal jurisdiction: (1) *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011); (2) *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014); and (3) *Original Creations, Inc. v. Ready America, Inc.*, 836 F. Supp. 2d 711 (N.D. Ill. 2011). None of these cases, however, compels a ruling in Defendant's favor.

To begin, *be2 LLC* and *Real Action Paintball* can be distinguished from both *Curry* and this case. In *be2 LLC*, the Seventh Circuit held that a dating web site did not have minimum contacts with Illinois merely because members of the site provided Illinois addresses. *be2 LLC*, 642 F.3d at 559. But there, unlike here, the defendant did not ship any products to Illinois. *Id*. Similarly, in *Real Action Paintball,* the Seventh Circuit found that sale of *noninfringing* goods to residents of Indiana did not establish specific personal jurisdiction for a trademark infringement claim regarding

5

the sale of separate *infringing* goods. *Real Action Paintball*, 751 F.3d at 801. Because this case, as in *Curry*, involves both the sale of infringing goods and the sale of those goods to residents of Illinois, *be2 LLC* and *Real Action Paintball* are materially distinguishable.

Finally, Defendant notes that *Original Creations* stands for the proposition that a sale of an infringing product without any allegation that the defendant "h[eld] itself out as open to do business with" Illinois residents is insufficient to establish jurisdiction in Illinois for an infringement claim. *Original Creations*, 836 F. Supp. 2d at 716. But because Plaintiff has offered sufficient evidence to show Defendant "h[eld] itself out as open to do business with" Illinois residents, the generic statement of law in *Original Creations*, even if accurate, does not compel a finding that personal jurisdiction is lacking. In any event, *Curry*—a binding precedent of the Court of Appeals—controls the determination of this issue.

In sum, because Defendant purposefully availed itself of the privileges of conducting business in this district and Plaintiff's claims against it arise out of those activities, the Court finds that it has specific personal jurisdiction over Defendant.

### B. Service of Process

Separately, Defendant contends that, because Plaintiff did not adhere to the requirements of the Hague Service Convention, service by email was improper. Defendant first argues that Plaintiff could have found Defendant's address had it undertaken a reasonable effort to find it and that the Convention therefore applies. (Dkt. 40 at 10.) Defendant also asserts that service by email under Rule 4(f)(3) of the

Rules of Civil Procedure was improper because the drafters of the Convention intended to prohibit any method of service not mentioned in its text. (*Id.* at 11.)

As explained below, although the Court finds that Plaintiff did not undertake reasonable diligence to ascertain Defendant's address, the Court holds that, because the Convention does not prohibit service by email, Plaintiff's service of process was proper under Rule 4(f)(3) of the Federal Rules of Civil Procedure.

        *1.*      *Whether Defendant's Address was "Known" Under the Convention*

The Hague Service Convention governs the service of process of civil matters among citizens of signatory nations in an attempt to give litigants a reliable, efficient, and standardized means of international service. The Convention does not apply if the defendant's address is "not known." Hague Service Convention Art. 1, 20 U.S.T. 361. Before courts will accept that a defendant's address is "not known," the plaintiff must make reasonably diligent efforts to ascertain and verify defendant's mailing address. *Progressive Se. Ins. Co. v. J & P Transp.*, No. 1:11–cv–137, 2011 WL 2672565, at *2 (N.D. Ind. July 8, 2011); *see also Compass Bank v. Katz*, 287 F.R.D. 392, 394-95 (S.D. Tex. 2012) (collecting cases).

Plaintiff did not undertake reasonably diligent efforts to ascertain Defendant's mailing address. Defendant's physical address in China was available on the AliExpress website it used to sell its products. (Dkt. 40 at 11.) Despite this, Plaintiff says Defendant's address was "not known" because the return address associated with the products Plaintiff purchased was a P.O. Box in Thailand. (Dkt 47 at 13.) Plaintiff further claims Defendant's address was not known because "unlike an e-

7

mail address, which is typically verified by … online marketplace platforms, no verification typically occurs for physical addresses" of merchants like Defendant. (Dkt. 18 at 2.)

Plaintiff's bare assertions regarding the reliability of Defendant's publicly available address are not a substitute for actual diligence. Plaintiff does not claim that it conducted any diligence to verify the address Defendant posted on AliExpress. Plaintiff does not even claim that it found that address before it asked the Court to allow for alternative means of service. Plaintiff therefore did not conduct the type of diligence courts have found sufficient to hold that a defendant's address was "not known" for the purpose of the Convention. *Cf. Advanced Access Content Sys. Licensing Adm'r, LLC. v. Shen*, No. 16-CV-386-WMC, 2018 WL 4757939 *4 (S.D.N.Y. Sep. 30, 2018) (plaintiff who investigated the available physical addresses of online merchant to see if they were valid for service and determined they were not conducted reasonable diligence).

Contrary to Defendant's position, however, Plaintiff's failure to conduct the diligence required under the Convention does not necessarily render service improper. The Court must next decide whether Plaintiff properly served Defendant under the Federal Rules of Civil Procedure.

2.  *Service Under Fed. R. Civ. P. 4(f)(3)*

Rule 4(f)(3) of the Federal Rules of Civil Procedure allows courts to permit alternative means of service if the party seeking to use an alternative means obtains permission of the court and those "other means [are] not prohibited by international

agreement." Fed. R. Civ. P. 4(f)(3). Defendant is a company domiciled in China, a country that, along with the United States, is a signatory to the Convention and its agreed means of service. But there "is no indication of a hierarchy in the text or structure of Rule 4(f)." *Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). So long as the proposed method of service is "not prohibited by international agreement[,]" Rule 4(f)(3) does not require a party to attempt service under the Convention before seeking a court order directing alternative service. *See Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (collecting cases).

Service by email is not specifically provided for in the Convention, but neither is it forbidden. *See MacLean–Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) ("The Hague Convention does not prohibit service by e-mail or facsimile."); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (same); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021) (same); *see also Commodity Futures Trading Comm'n v. Caniff*, No. 19-cv-02935, 2020 WL 956302, at *6 (N.D. Ill. Feb. 27, 2020) ("The Convention does not affirmatively authorize, nor does it prohibit, service by email"). Thus, despite that Plaintiff had not attempted service under the terms of the Convention, the Court was authorized to order that service be effected by an alternative means (*i.e.*, email) so long as Plaintiff "ma[d]e a showing as to why alternative service should be authorized." *Flava Works*, 2013 WL 1751468, at *7.

A speedy method of service in this case was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable. *Strabala*, 318 F.R.D. at 114 ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods. . . .'") (quoting 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.))). In addition, email was a more reliable method of service in this case because Defendants' email addresses were verified by the sales platform, while their physical addresses were not. (*See* Dkt. 18 at 2.) This is precisely a situation that justifies an order directing that service be effected by alternative means. *See Ouyeinc*, 2021 WL 2633317, at *3 ("courts have routinely upheld service by email" in infringement actions where online stores' "business appeared to be conducted entirely through electronic communications") (cleaned up) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("When faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process")).

Against this, Defendant argues that two Supreme Court decisions—*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) and *Water Splash, Inc. v. Menon*, — U.S. —, 137 S. Ct. 1504 (2017)—include language that bars service by email. (Dkt. 40 at 11.) Specifically, Defendant observes that both *Schlunk* and *Water Splash* noted that the Convention "pre-empts inconsistent methods of service [wherever] it applies." *Schlunk*, 486 U.S. at 699; *Water Splash,* 137 S. Ct. at 1507. Defendant reads this statement to prohibit all methods of service not mentioned

10

in the Convention's text. (Dkt. 40 at 11.) Because email is not mentioned in the Convention, Defendant says, it is "inconsistent" with the Convention and this Court was not permitted to authorize service by email under Rule 4(f)(3). (*Id.*)

With respect, the Court declines to adopt Defendant's interpretation of *Schlunk* and *Water Splash*. As the *MacLean–Fogg*, *Sulzer Mixpac,* and *Ouyeinc* courts observed, the Convention neither authorizes nor prohibits service by email—it is entirely silent on the issue. *MacLean–Fogg*, 2008 WL 5100414, at *2; *Sulzer Mixpac*, 312 F.R.D. at 331; *Ouyeinc*, 2021 WL 2633317, at *3. Defendant has not directed the Court to any provision of the Convention that limits a party to the methods of service enumerated in the Convention or that requires a party to exhaust the Convention's methods before pursuing other methods. *See Patrick's Rest., LLC v. Singh*, No. 18-CV-00764, 2019 WL 121250, at *2-3 n. 3 (D. Minn. Jan. 7, 2019) (Convention does not contain an exhaustion requirement and holding that service by email may be unenumerated in the Convention while "still not 'inconsistent' with" the Convention). In the absence of a provision affirmatively prohibiting service by email or any reason to believe the Convention bars all unenumerated methods of service, district courts have authority to allow service by email as an alternative means of service under Rule 4(f)(3). The Supreme Court's anodyne statement that the Convention prohibits "inconsistent methods of service" does not dictate otherwise.

Finally, Defendant cites *Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) as an additional reason to find that service by email was inappropriate. In that case, the court observed that China has objected to Article

10(a) of the Convention, which states: "Provided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. 361. Interpreting the phrase "postal channels" to include email, and in view of the language of Article 10(a), the *Luxottica* court held (contrary to *MacLean-Fogg*, *Sulzer Mixpac*, and *Patrick's Restaurant*) that the Convention prohibits service by email under Rule 4(f)(3) to parties located in China. *Luxottica*, 391 F. Supp. 3d at 827.

This Court, however, declines to interpret the term "postal channels" to include electronic mail. On the contrary, the most natural understanding of "postal channels" applies only to material that is physically delivered by letter carrying authorities. In other words, "postal channels" does not refer to alternate forms of communication, including email, notice by publication, or service by social media. *See Sulzer Mixpac*, 312 F.R.D. at 331; *Patrick's Restaurant*, 2019 WL 121250, at *3 (collecting cases).

Although the issue is not free of doubt, the Court is persuaded by *Sulzer Mixpac*, *MacLean-Fogg*, *Patrick's Restaurant*, and *Ouyeinc* that service by email is not prohibited by the Convention. Because *Water Splash* and *Schlunk* do not compel a contrary finding, and in the absence of controlling authority holding otherwise, the Court holds that service by email in this case was proper under Rule 4(f)(3).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 39) is denied.

SO ORDERED in No. 20-cv-05049.

Date: July 9, 2021

JOHN F. KNESS
United States District Judge